## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

BRANDON J. MOBLEY,

         Plaintiff,

    v.

C.O. THRIFT, et al.,

         Defendants.

CIVIL ACTION NO.: 5:22-cv-57

## REPORT AND RECOMMENDATION

Defendants Thrift, Szabo, Hammock, Jones, Whitaker, Fairchild, and Toole ("Defendants") filed a Motion to Dismiss Plaintiff's Complaint.[1]  Doc. 46.  Plaintiff filed a Response in opposition.  Doc. 53.  For the following reasons, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss.  Plaintiff's claims against Defendants in their official capacities should be dismissed.  However, if the Court adopts this recommendation, all of Plaintiff's claims against Defendants in their individual capacities will remain pending.

## BACKGROUND

In his Complaint, Plaintiff asserts constitutional claims under 42 U.S.C. § 1983 arising from events in 2022 at Ware State Prison in Waycross, Georgia.  Doc. 1.  Plaintiff was a prisoner

---

[1]    Plaintiff named "Medical Personnel" as a Defendant, who he later identified as Defendant Wellpath.  See Doc. 49 at 1 n.1 (granting Plaintiff's motion to amend naming Wellpath).  Defendant Wellpath has not been served and has not appeared.  The recommendations in this Report do not apply to Defendant Wellpath.  I have recommended the Court dismiss Plaintiff's claims against Defendant Wellpath, doc. 62, and Plaintiff has stated affirmatively he no longer wishes to pursue claims against Wellpath, doc. 66.

at Ware State Prison during the time relevant to his claims.  Id. at 2, 8.  After conducting frivolity review, the Court permitted Plaintiff to proceed with Eighth Amendment claims (including claims for excessive force, failure to intervene, and deliberate indifference to a serious medical need) against Defendants Thrift, Szabo, Hammock, Medical Personnel (i.e., Wellpath), Jones, and Whitaker.  Doc. 23.  The Court also allowed Plaintiff's retaliation claims against Defendants Thrift, Szabo, Hammock, Jones, Fairchild, and Toole to proceed.  Id.

Plaintiff's claims arise from five separate incidents that occurred on five different dates. Two incidents involve prison guards slamming Plaintiff's hands and arms inside a cell door tray flap (referred to as "Tray-Flap Incidents"), and three incidents involve harassment and threats by prison guards (referred to as "Harassment Incidents").  The details of Plaintiff's allegations— especially the dates of the incidents and the individuals involved—are important to resolving Defendants' arguments concerning Plaintiff's exhaustion of administrative remedies.  I describe each of the five incidents here.

I.      **Tray-Flap Incidents**

   A.      **Tray-Flap Incident #1**

Plaintiff alleges Correctional Officer ("CO") Thrift, Sgt. Szabo, and Unit Manager Hammock attacked Plaintiff on February 15, 2022, between 11:50 a.m. and 12:30 p.m.[2]  Doc. 1 at 8.  Specifically, Plaintiff alleges Defendant Thrift approached Plaintiff's cell and slammed both of Plaintiff's hands inside a tray and handcuff flap for no apparent reason.  Id.  Defendants

---

[2]      In his Complaint, Plaintiff alleged Tray-Flap Incident #1 occurred on January 15, 2022, not February 15, 2022.  However, Plaintiff clarifies in his Response to Defendants' Motion to Dismiss Tray-Flap Incident #1 is the same incident he described in Grievance Number 336280.  Doc. 53 at 2. Grievance Number 336280 states the incident occurred on February 15, 2022.  Although Plaintiff could have been more helpful in resolving the date discrepancy, his intent is apparent: Plaintiff intended to allege Tray-Flap Incident #1 occurred on February 15, 2022.  The Court, therefore, treats Plaintiff as alleging Tray-Flap Incident #1 occurred on February 15, 2022.

Hammock and Szabo first stood by and observed, then "[took] part in [the] incident at hand."  Id.  Plaintiff alleges he screamed for help while Defendants Hammock and Szabo continued to use force, causing Plaintiff a fractured thumb, cuts, and bleeding.  Id.

Defendants Szabo and Hammock denied Plaintiff medical treatment for his injuries.  Defendants Szabo and Hammock told Plaintiff his wounds would heal and were not life threatening.  Id.  Later, during afternoon pill call, Defendant Szabo blocked Plaintiff's access to medical treatment.  Id. (alleging "Szabo jumped on top of [Plaintiff's] tray and handcuff flap and sat on it until medical personnel left").

### B.    Tray-Flap Incident #2

Plaintiff alleges the second incident involving his tray flap occurred on April 19, 2022, between 3:30 p.m. and 4:00 p.m.[3]  Id. at 9.  Plaintiff asked for medical attention because he was having severe chest pains.  Id.  Sgt. Szabo, CO II Whitaker, and CO I Jones approached Plaintiff's cell and told him medical was coming.  Id.  Defendant Jones suddenly slammed Plaintiff's tray flap on his right forearm.  Id.  Plaintiff asked for medical attention because he was injured, but the three officers walked away laughing.  Id.  Another inmate told the three officers about Plaintiff's injuries, but the officers only made dismissive comments.  Id.  Plaintiff never received medical assistance for his injuries.  Id.

---

[3]      Like with Tray-Flap Incident #1, Plaintiff alleged an incorrect date in his Complaint for Tray-Flap Incident #2.  Plaintiff alleged Tray-Flap Incident #2 occurred on May 5, 2022, not April 19, 2022.  Plaintiff states in his Response to Defendants' Motion to Dismiss Tray-Flap Incident #2 is the same incident he described in Grievance Number 337991.  Doc. 53 at 2.  In Grievance Number 337991 Plaintiff stated the incident occurred on April 19, 2022.  Plaintiff's intent is apparent: Plaintiff intended to allege Tray-Flap Incident #2 occurred on April 19, 2022.  The Court, therefore, treats Plaintiff as alleging Tray-Flap Incident #2 occurred on April 19, 2022.

## II.      Harassment Incidents

### A.      Harassment Incident #1

Plaintiff alleges Unit Manager Hammock threatened him on March 15, 2022, between 3:50 and 3:59 p.m.  Id. at 12.  Hammock approached Plaintiff's cell and told Plaintiff if he did not drop his grievance and lawsuit, she would "make [Plaintiff's] time at Ware State a living hell."  Id.

### B.      Harassment Incident #2

Plaintiff alleges CO II Thrift, Sgt. Toole, and CO I Fairchild retaliated against Plaintiff on April 25, 2022, between 12:00 p.m. and 12:45 p.m.  Id.  The three officers came into Plaintiff's cell and removed Plaintiff's paperwork and documents "pertaining to incident at hand" and stated "what they were doing was retaliation" for Plaintiff filing a grievance against Defendant Thrift.  Id.

### C.      Harassment Incident #3

Plaintiff alleges Unit Manager Hammock, Sgt. Szabo, and CO I Jones harassed him on May 24, 2022, beginning at 2:50 p.m.  Id.  Defendant Szabo sprayed pepper spray inside Plaintiff's cell.  Id.  Then, Defendants Hammock, Szabo, and Jones removed Plaintiff from his cell, restrained him, and placed him back in the cell.  Id.  Plaintiff remained in restraints with his hands behind his back for almost 12 hours while the three officers went home.  Id.

## DISCUSSION

Defendants argue Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his administrative remedies before filing suit.  Doc. 46-1 at 5–16.  Defendants also argue

Plaintiff's official capacity claims for money damages are barred by the Eleventh Amendment and § 1983.[4] Id. at 16–18.

Plaintiff opposes Defendants' Motion to Dismiss. Plaintiff argues he fully exhausted available administrative remedies for claims arising from the two Tray-Flap Incidents. Doc. 53. Plaintiff acknowledges he did not satisfy the requirements for pursuing administrative remedies related to the Harassment Incidents but argues he did not do so because he was experiencing retaliation for using the grievance process and feared additional retaliation. Id. at 3–4. Thus, Plaintiff essentially argues administrative remedies were not available for these claims. As to Defendants' arguments about official capacity claims, Plaintiff merely states he intended to sue Defendants in their individual and official capacities.

## I.      Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how

---

[4]      Defendants state once in their brief Plaintiff "failed to state a claim upon which relief may be granted," but the brief is devoid of any argument or support for this contention. Doc. 46-1 at 5. The Court, therefore, should not consider the argument further.

special the circumstances.  Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))).  An incarcerated

individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

While exhaustion is a mandatory requirement for suing, one exception exists.  Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion.").  "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).  "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche v. Brown, 783 F.3d 1204, 1214 (11th Cir. 2015) ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Gipson v. Renninger, 750 F. App'x 948, 951 (11th Cir. 2018) ("Threats of substantial retaliation against an inmate for lodging or pursuing a grievance in good faith render the administrative remedy unavailable and thus lift the exhaustion requirement as to the affected parts of the process.") (citing Turner, 541 F.3d at 1084–85). To show a threat of retaliation rendered the administrative remedy process unavailable, two conditions must be met:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

Gipson, 750 F. App'x at 951–52 (citing Turner, 541 F.3d at 1085).

## II.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 1210; Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018).  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860 (quoting Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1209 (11th Cir. 2015)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

## III.    Applying Turner

### A.    The Georgia Department of Corrections' ("GDC") Administrative Remedies

Ware State Prison utilizes the GDC procedure for prison grievances. Doc. 46-2 at 2–3. The GDC's grievance procedure is set out in Standard Operating Procedure ("SOP") 227.02. Id. Under SOP 227.02, inmates "may file a grievance about any condition, policy, procedure, or action or lack thereof that personally affects the Offender" and is not expressly listed in the SOP as a "non-grievable issue." Id. at 15. Inmates "may file a grievance alleging retaliation or harassment, regardless of the form of the alleged retaliation or harassment." Id. at 16.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Id. at 19–26. Under SOP 227.02, original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Id. at 19. The Warden has 40 calendar days to respond to the grievance. Id. at 22.

After the inmate receives the Warden's response to his original grievance or if the time allowed for the Warden's response has expired, an inmate may appeal the decision to the Central Office. Id. at 25.  An inmate has seven days from the date of the warden's response to file the Central Office Appeal.  Id.  The Commissioner has 120 days to respond to the Central Office Appeal.  Id. at 26.  After filing a Central Office Appeal and receiving a response, the grievance procedure is complete.  Id. at 6.

Grievances in which inmates allege improper use of force are exempt from the step-two appeal requirement.  Id. at 23.  If an inmate alleges improper use of force, his grievance is forwarded to the Office of Professional Standards, Criminal Investigation Division ("CID") for review.  Id.  If the grievance is accepted and not rejected for untimeliness or other reasons, the inmate is given notice of the referral to the Office of Professional Standards, and the grievance is effectively closed.  Id. at 23–24.

**B.      Plaintiff Exhausted Available Administrative Remedies**

*1.      **Turner** step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

**Claims Arising from Tray-Flap Incidents**.  It is undisputed Plaintiff filed two grievances that describe incidents where prison guards slammed Plaintiff's hands and arms in a tray flap.[5]  Even so, Defendants argue the two grievances were deficient.  Defendants argue the

---

[5]      It is also undisputed Plaintiff was not required to appeal these grievances or take any other steps after filing the grievances.  The grievances concerned excessive force, so Plaintiff fully exhausted the administrative remedy process once the grievances were accepted and referred to CID.

grievances contained incorrect dates and Plaintiff failed to sufficiently identify all correctional officers involved in the incidents.

First, Defendants contend the two grievances Plaintiff did file—Grievance Numbers 336280 and 337991—state the Tray-Flap Incidents occurred on different dates from the dates Plaintiff alleged in his Complaint.[6]  Doc. 46-1 at 12–16.  This argument is unpersuasive.  Plaintiff has clarified the two incidents he intended to assert claims based on are the same two incidents described in Grievance Numbers 336280 and 337991.  Doc. 53 at 2.  The factual allegations in Plaintiff's Complaint are nearly identical to the descriptions of the two incidents in the two grievances.  Plaintiff simply got the dates wrong in his Complaint.  The discrepancy between the Complaint dates and the grievance dates is a minor error.  Accordingly, I construe Plaintiff's Complaint as alleging Tray-Flap Incident #1 occurred on February 15, 2022, and Tray-Flap Incident #2 occurred on April 19, 2022.  Thus, I reject Defendants' first argument.[7]

Second, Defendants argue Plaintiff failed to exhaust his claims against Defendants Szabo and Hammock arising from Tray-Flap Incident #1 because Plaintiff failed to expressly name those individuals in Grievance Number 336280.  Defendants are incorrect.  It is well established exhaustion of grievance procedures "does not require that every single defendant be identified by name."  Toenninges v. Ga. Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015) (citing

---

[6]     As noted above, Plaintiff alleged Tray-Flap Incident #1 occurred on January 15, 2022, but Grievance Number 336280 states the incident occurred on February 15, 2022.  Plaintiff alleged Tray-Flap Incident #2 occurred on May 5, 2022, but Grievance Number 337991 states the incident occurred on April 19, 2022.

[7]     Regarding Defendants' first argument, I do not discern any factual dispute.  The parties agree about the submission of the two grievances and the contents of the two grievances.  To the extent there is a dispute, it is only about whether Plaintiff intended to assert claims based on the incidents described in the two grievances, which is not a factual dispute.  Therefore, this argument can be fully resolved at Turner step one.  If I were to consider the parties' respective positions and evidence under Turner step two, I would reach the same conclusion.

12

Parzyck v. Prison Health Servs. Inc., 627 F.3d 1215, 1218 (11th Cir. 2010); Brown v. Sikes, 212 F.3d 1205, 1209–10 (11th Cir. 2000)); see also Jones, 549 U.S. at 219 ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.").  There is no requirement in SOP 227.02 to specifically name every official involved.  In Grievance Number 336280, Plaintiff identified Defendant Thrift by name and expressly stated "unit manager & SGT were aware and present" when Tray-Flap Incident #1 occurred.  Thus, Plaintiff adequately described the facts and circumstances of Tray-Flap Incident #1 and sufficiently identified Defendants Szabo and Hammock, even if those individuals were not identified by name.[8]  I, therefore, reject Defendants' second argument.

Ultimately, I reject both of Defendants' arguments and conclude Plaintiff exhausted administrative remedies for claims arising from the Tray-Flap Incidents.

**Claims Arising from Harassment Incidents.**  For Plaintiff's claims arising from the Harassment Incidents, it is undisputed Plaintiff did not fully exhaust administrative remedies in accordance with the governing SOP.  Plaintiff filed a grievance related to only one of the three Harassment Incidents and did not appeal the denial of that one grievance.  However, Plaintiff

---

[8]      Defendants also argue Plaintiff failed to exhaust his administrative remedies against Defendant Jones arising from Tray Flap Incident #2.  Plaintiff's allegations in Grievance Number 337991 involved a male officer, Jacob Jones, but a different, female officer, Jacqueline Jones, has appeared as Defendant Jones in this case.  Doc. 46-1 at 14–15.  Defendants argue Grievance Number 337991 is thus insufficient to exhaust any claims against Jacqueline Jones.  Plaintiff does address this argument in his Response, though Plaintiff once refers to "Jacob Jones" as a Defendant.  Doc. 53 at 1.

Plaintiff was granted *in forma pauperis* status in this case, so Plaintiff relies on the United States Marshals Service to effectuate service of process under Federal Rule of Civil Procedure 4(c)(3).  The Marshal mailed a request for waiver of service and a copy of the Complaint to Officer Jones at Ware State Prison.  See Docs. 29, 32, 42.  Jacqueline Jones waived service on July 31, 2023, and appeared in the case.  There is no indication Jacob Jones was mailed or served with a copy of the summons and Complaint.

It is not appropriate to dismiss Defendant Jones for failure to exhaust at this time.  Plaintiff has clarified he intended to assert claims against Jacob Jones arising from Tray Flap Incident #2, but Jacob Jones has not appeared.  Doc. 66.  The Court is separately ordering service on Jacob Jones.

argues administrative remedies were unavailable for the harassment claims because he was experiencing threats and retaliation and feared additional retaliation if he pursued the grievance process.  Id. at 2–3.

Taking Plaintiff's facts as true, intimidation rendered the grievance process unavailable, so exhaustion would not be required for claims arising from the Harassment Incidents.  See Ross, 578 U.S. at 642 (holding administrative remedies are unavailable when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentations, or intimidation").  Defendants dispute Plaintiff's claim and argue the administrative remedy regime is available to all inmates, and Plaintiff did not pursue it. Therefore, the parties' allegations arguably conflict at Turner step one.  The Court must move to Turner step two.

### 2.      *Turner* step two.

The Court must determine whether administrative remedies were available for Plaintiff's claims arising from the Harassment Incidents, which necessarily involves factual determinations.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  The Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment, and courts in this district have applied that principle equally when making factual determinations under Turner step two.  See Womack, 2008 WL 4104148 at *5–6 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).  Thus, to the extent Plaintiff relies upon his own self-serving

allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Id. (citing Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys, 426 F.3d at 555).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding

the exhaustion issue").  Defendants and Plaintiff both submitted evidence and argument showing they had a sufficient opportunity to develop the record.

Plaintiff argues in his Response he did not file grievances on Harassment Incident #1 and Harassment Incident #3 and did not appeal the denial of his grievance on Harassment Incident #2 because he experienced retaliation and threats in response to his earlier efforts to pursue grievances and litigation.  Doc. 53 at 3–4.  Defendants argue generally in their Motion to Dismiss Plaintiff failed to exhaust all "available administrative remedies" and the DOC grievance procedure is "available to all inmates."  Doc. 46-1.  However, Defendants fail to specifically address Plaintiff's allegation he was intimidated by prison officials to the point the grievance procedure was essentially unavailable.[9]

Based on the record before the Court, I find Plaintiff has shown administrative remedies were unavailable for claims arising from the Harassment Incidents.  Plaintiff's undisputed allegations describe multiple instances where one or more prison officials threatened or physically retaliated against Plaintiff for pursuing grievances.[10]  The timeline of events Plaintiff describes is important:

1.    February 15, 2022 (Tray-Flap Incident #1): Defendants Hammock, Thrift, and Szabo attack Plaintiff in his cell.

2.    February 20, 2022: Plaintiff files Grievance Number 336280 about Tray-Flap Incident #1.

---

[9]    Plaintiff made his assertion about threats and intimidation in his Response to the Motion to Dismiss.  Doc. 53.  Defendants did not file a reply in support of their Motion.  Thus, Plaintiff's arguments are essentially unopposed.

[10]    The Court expresses no view on whether Plaintiff will be able to prove his claims of retaliation in this case.  Rather, the Court considers the record now before it purely for evaluating whether administrative remedies were available to Plaintiff.

3. March 15, 2022 (Harassment Incident #1): Defendant Hammock comes to Plaintiff's cell and tells Plaintiff she will "make [Plaintiff's] time at Ware State [Prison] a living hell" if Plaintiff does not drop his grievance.

4. April 19, 2022 (Tray-Flap Incident #2): Defendants Szabo, Whitaker, and Jones attack Plaintiff in his cell.

5. April 20, 2022: Plaintiff files Grievance Number 337991 about Tray-Flap Incident #2.

6. April 25, 2022 (Harassment Incident #2): Defendants Thrift, Toole, and Fairchild seize paperwork and documents and tell Plaintiff they were doing so because Plaintiff filed a grievance against Defendant Thrift.

7. April 28, 2022: Plaintiff files Grievance Number 338204 about Harassment Incident #2.

8. May 24, 2022 (Harassment Incident #3): Defendants Hammock, Szabo, and Jones attack Plaintiff in his cell, spray Plaintiff with pepper spray, and restrain Plaintiff for nearly 12 hours.

9. June 14, 2022: Plaintiff receives the denial of his Grievance Number 338204 related to Harassment Incident #2 but does not appeal.

Considering the record and the lack of contrary evidence from Defendants, I conclude a "reasonable juror would undertake the suspension of disbelief necessary to credit [Plaintiff's] allegations.'" Womack, 2008 WL 4104148, at *6. Furthermore, Plaintiff has demonstrated prison officials thwarted him "from taking advantage of a grievance process through . . . intimidation" such that Plaintiff was not required to exhaust administrative remedies for claims arising from the Harassment Incidents. Ross, 578 U.S. at 644. I address each of Plaintiff's failures to pursue particular parts of the grievance process: his failure to initiate grievances related to Harassment Incidents #1 and #3, and his failure to appeal the denial of his grievance about Harassment Incident #2.

(a)      *Plaintiff's failure to grieve Harassment Incident #1.*

Plaintiff demonstrates he was actually deterred from filing a grievance related to Harassment Incident #1, where Defendant Hammock threatened Plaintiff. There is no grievance

or attempt to file a grievance about Harassment Incident #1 in the record.  The fact Plaintiff filed

other grievances does not undercut the subjective unavailability of the grievance process here.

Though Plaintiff had already filed another grievance involving Defendant Hammock in Tray

Flap Incident #1, this was before Defendant Hammock directly threatened Plaintiff for filing

grievances against her.  Though Plaintiff filed two more grievances after Harassment Incident

#1, neither of them involved Defendant Hammock.

The very nature of Harassment Incident #1 would reasonably discourage an inmate from

pursuing administrative remedies, particularly as to Defendant Hammock.  Plaintiff alleges

Defendants Thrift, Hammock, and Szabo participated in a physical attack on February 15, 2022,

and Plaintiff promptly grieved the attack.  However, Plaintiff alleges Defendant Hammock

responded to the filing of that grievance by telling Plaintiff she would make Plaintiff's life a

"living hell" unless Plaintiff dropped the grievance.  Thus, by her own actions, Defendant

Hammock objectively thwarted Plaintiff from taking advantage of the grievance process with

regards to Harassment Incident #1.

*(b)    Plaintiff's failure to grieve Harassment Incident #3.*

Plaintiff demonstrates he was actually deterred from filing a grievance related to

Harassment Incident #3.  There is no grievance or attempt to file a grievance about Harassment

Incident #3 in the record.  The fact Plaintiff had filed three previous grievances before

Harassment Incident #3 occurred on May 24, 2022, does not disprove the subjective

unavailability of the grievance process as to Harassment Incident #3.  Plaintiff made no attempts

to file grievances at Ware State Prison or to otherwise pursue exhaustion of his claims after

Harassment Incident #3.  The "campaign" of harassment incident Plaintiff did grieve,

Harassment Incident #2, was far less intense and less physical than Harassment Incident #3.  To

the extent Plaintiff was undeterred from filing grievances before Harassment Incident #3

occurred on May 24, 2022, it is reasonable to assume Plaintiff would have been deterred after

May 24, 2022.  I also credit Plaintiff's suggestion the cumulative effects of all of these incidents

deterred him from grieving the last of the incidents for which he brings claims.  Doc. 58 at 4

("The threat to the well being of my life had become a reality . . . .").

Plaintiff shows objective deterrence from grieving Harassment Incident #3.  In the few

months before Harassment Incident #3, Plaintiff's hand had been slammed in his tray flap twice,

Defendant Hammock threatened Plaintiff for filing a grievance, and Defendants Thrift, Toole,

and Fairchild seized Plaintiff's documents in retaliation for Plaintiff filing a grievance.  In

Harassment Incident #3, Plaintiff was pepper sprayed and restrained for approximately 12 hours.

In light of these allegations, Plaintiff has shown a threat that would deter a reasonable inmate of

ordinary firmness and fortitude from lodging a grievance about Harassment Incident #3.

> (c)     *Plaintiff's failure to appeal his grievance for Harassment
>          Incident #2.*

Plaintiff shows threats of retaliation subjectively and objectively deterred him from

appealing his grievance for Harassment Incident #2 when he received the denial of Grievance

Number 338204 on June 14, 2022.  Plaintiff was actually deterred from filing an appeal in spite

of the fact he filed three previous grievances.  Again, I note Plaintiff made no attempts to pursue

grievances or appeals after Harassment Incident #3 on May 24, 2022.  I also credit Plaintiff's

suggestion the cumulative effects of these incidents deterred him from taking any further steps in

the grievance process.  Plaintiff alleges a "campaign of harassment" of increasing intensity,

beginning with an ominous threat by Defendant Hammock, followed by Defendants Thrift,

Toole, and Fairchild taking Plaintiff's personal effects, and culminating with Defendants

Hammock, Szabo, and Jones attacking him and leaving him restrained in his cell for 12 hours.

Under these circumstances, Plaintiff's previous attempts to pursue exhaustion do not exclude the possibility he was subjectively deterred from pursuing an appeal at the end of the "campaign" he alleges. This campaign would also deter reasonable inmate from appealing a grievance.

In sum, it is undisputed Plaintiff failed to exhaust his administrative remedies for the three Harassment Incidents in accordance with the governing SOP, but Plaintiff has shown, through his Response, the grievance process was subjectively and objectively unavailable due to threats, harassment, and retaliation. Defendants have not refuted Plaintiff's allegations.

Accordingly, I **RECOMMEND** the Court **DENY** the portion of Defendants' Motion to Dismiss based on Plaintiff's failure to exhaust administrative remedies.

## IV.    Official Capacity Claims

Defendants argue Plaintiff has no cognizable claims for monetary damages against Defendants in their official capacities because there is no legal remedy against state government officials under § 1983. Plaintiff argues he sued Defendants in both individual and official capacities.

States are immune from private suits under the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state agency or a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under § 1983.

Plaintiff did not state he intended to sue Defendants in their official capacities in his Complaint. Plaintiff requests only monetary relief and states all Defendants "are subjected to individual claims." Doc. 1 at 5. However, in his Response, Plaintiff states he sued each

Defendant "in their individual and official capacities."  Doc. 53 at 3.  To the extent Plaintiff brings claims for monetary damages against Defendants in their official capacities, those claims are due for dismissal under the Eleventh Amendment.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss Plaintiff's claims against Defendants in their official capacities.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Defendants' Motion to Dismiss.  Plaintiff's claims against Defendants in their official capacities are due for dismissal.  However, if the Court adopts this recommendation, Plaintiff's claims against Defendants in their individual capacities remain pending.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

　　　　**SO REPORTED and RECOMMENDED**, this 6th day of March, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA