IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

BRANDON J. MOBLEY,

               Plaintiff,

     v.

C.O. THRIFT, et al.,

               Defendants.

CIVIL ACTION NO.: 5:22-cv-57

## REPORT AND RECOMMENDATION

Defendants filed a Motion for Summary Judgment.  Doc. 99.  Plaintiff filed a Response.[1]

Doc. 103.  Defendants filed a Reply.  Doc. 109.  For the following reasons, I **RECOMMEND**

the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's claims,

and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of

dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to proceed *in forma*

*pauperis* on appeal.

## BACKGROUND

### I.     Plaintiff's Allegations and Procedural History

Plaintiff filed this action under 42 U.S.C. § 1983.  Doc. 1.  Plaintiff alleges that

Defendants violated his constitutional rights while Plaintiff was incarcerated at Ware State

---

[1] Plaintiff titles his filing as a Motion for Summary Judgment.  However, in his brief in support, Plaintiff argues that "there is [a] genuine issue [of] material facts" and that he "has presented enough evidence that [he] can meet the substantive evidentiary standards that apply to this case."  Doc. 104 at 3. Plaintiff also invokes the standard for a non-moving party to survive a motion for summary judgment. Therefore, I construe Plaintiff's filing as a Response to Defendants' Motion for Summary Judgment. Even if the Court construed Plaintiff's filing as an independent motion, I have recommended that Defendants' Motion for Summary Judgment be granted.  Therefore, no basis would exist to grant summary judgment to Plaintiff in any instance.

Prison.  Plaintiff alleges that, on February 15, 2022, he was attacked by Defendant Thrift while in his cell.  Plaintiff alleges that Defendant Thrift slammed his hands and forearms in his cell door tray flap while Defendant Szabo and Defendant Hammock watched.  Id. at 8.  Plaintiff alleges he lost feeling in his right hand and suffered puncture wounds, lacerations, and a right thumb fracture.  Id.  Plaintiff alleges that he was denied medical aid by Defendants and that Defendant Szabo attempted to hide Plaintiff's wounds from medical staff.  Id.

Plaintiff also alleges facts regarding an incident on April 19, 2022, during which Defendants ignored Plaintiff's complaints of severe chest pain and attacked him a second time. Plaintiff alleges Defendant Jones slammed the cell door tray flap, causing him to lose feeling in his right hand and causing deep cuts to his fingers.  Id. at 9.  Plaintiff alleges that he was never offered medical assistance regarding the April 19, 2022 incident.  Id.

Plaintiff also alleges that, in a string of incidents on March 15, April 25, and May 24, 2022, Defendants retaliated against him for filing a grievance by threatening him, removing documents from his cell, pepper spraying his cell, and handcuffing him for 12 hours at a time. Id. at 12.  Plaintiff alleges that Defendant Hammock told him she would "make [his] time at Ware State a living hell."  Id.  Plaintiff alleges Defendants told him that they took documents from his cell out of retaliation.  Id.  Plaintiff contends that these acts constituted violations of the Eighth Amendment and Fourteenth Amendment.  Id.

After conducting frivolity review of Plaintiff's Complaint, the Court dismissed some of Plaintiff's Eighth Amendment excessive force, failure to intervene, and deliberate indifference claims, as well as all of Plaintiff's Fourteenth Amendment equal protection claims.  Doc. 23. The Court allowed the following claims to proceed: Plaintiff's Eighth Amendment excessive force claims against Defendants Thrift, Szabo, Hammock, Jones, and Whitaker; Plaintiff's

Eighth Amendment failure to intervene claims against Defendants Thrift, Szabo, Hammock, Medical Personnel, Jones, and Whitaker; Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Thrift, Szabo, Hammock, Medical Personnel, Jones, and Whitaker; and Plaintiff's retaliation claims against Defendants Thrift, Szabo, Hammock, Jones, Fairchild, and Toole.  Doc. 24.

Plaintiff filed a motion to amend the Complaint, seeking to replace Defendant Medical Personnel with Defendant Wellpath.  Doc. 45.  The Court granted the motion to amend.  Doc. 49. The Court then conducted frivolity review of Plaintiff's amendments and dismissed Plaintiff's claims against Defendant Wellpath.  Doc. 62.

The remaining Defendants filed a motion to dismiss.  Doc. 46.  The Court granted the motion in part, dismissing Plaintiff's claims against Defendants in their official capacities. Docs. 67, 69.

Defendants jointly filed their instant Motion for Summary Judgment.  Doc. 99.  In the Motion, Defendants argue that Plaintiff cannot prove his claims of excessive force, that any force used was justified to gain compliance, that the amount of force used was proportional to the need, that Plaintiff's injuries were not severe, that Defendants perceived a threat, and that Defendants made efforts to minimize their use of force.  Doc. 99-2 at 8–14.  Defendants also argue that Plaintiff cannot prove his failure to intervene claims because the evidence demonstrates that they never had the need or opportunity to intervene.  Id. at 15.  Defendants argue that Plaintiff cannot prove his deliberate indifference claims because his injuries were not severe, Defendants were unaware of any risk of serious harm to Plaintiff, and nothing in the record proves that they denied him needed medical attention.  Id. at 16–19.  Defendants then argue that Plaintiff cannot prove his retaliation claims because he continued to file grievances

after any alleged threatening behavior occurred, because the record does not show that Defendants took any of Plaintiff's documents out of retaliation for filing grievances, and because any use of pepper spray was in response to Plaintiff's non-compliance with commands.  Id. at 20–24.  Defendants also argue that they are entitled to qualified immunity because they were acting within their discretionary authority, the standards for any violations were not clearly established when Plaintiff's claims arose, and there is no evidence they retaliated against Plaintiff.  Id. at 24–27.  Finally, Defendants argue that Plaintiff is not entitled to damages because he has shown no more than a de minimis injury.  Id.

Plaintiff filed a Response.  Doc. 103.  Plaintiff argues that the evidence shows that a genuine issue of material fact exists as to his claims.  Doc. 104 at 3.  Plaintiff relies primarily on his own sworn deposition testimony and medical records to support his contentions.  Doc. 103 at 9–39; Docs. 103-1, 103-2.

## II.    Undisputed Material Facts

It is important to note at the outset that specific factual allegations in a sworn complaint must be considered for the purposes of summary judgment.  Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020); see also Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) ("We also credit the specific facts pled in [a plaintiff's] sworn complaint when considering his opposition to summary judgment.") (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014)).  Plaintiff submitted a sworn Complaint, which will be considered in opposition to Defendants' Motion.  Plaintiff's allegations are summarized in the background section above and incorporated in the following undisputed, material facts.

Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance with the Federal Rule of Civil Procedure 56

and Local Rule 56.1. Doc. 99-1. Defendants' SMF is supported by: Plaintiff's sworn deposition, doc. 99-3; Defendant Thrift's sworn declaration, doc. 99-4; Defendant Szabo's sworn declaration, doc. 99-5 at 1–6; Defendant Hammock's sworn declaration, doc. 99-6; Defendant Jones's sworn declaration, doc. 99-7; Defendant Whitaker's sworn declaration, doc. 99-8; Defendant Fairchild's sworn declaration, doc. 99-9; Defendant Toole's sworn declaration, doc. 99-10 at 1–5; Plaintiff's disciplinary reports, doc. 99-5 at 27, doc. 99-10 at 6; and use of force reporting documentation, doc. 99-5 at 8–27.

Plaintiff responded to Defendants' SMF with his own Statement of Material Facts ("Plaintiff's SMF"). Doc. 103 at 4–6. Many statements in Plaintiff's SMF reiterate the allegations in his sworn Complaint. I also note that Plaintiff fails to support all of his factual assertions with citations to the record. Local Rule 56.1 requires that each statement of material fact be supported by a citation to the record. I will not consider statements in Plaintiff's filings consisting of unsupported factual allegations, conclusory statements, or supposition. Finally, when considering the record at summary judgment, "all justifiable inferences are to be drawn" in favor of the non-movant. Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)). Thus, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment. Where a fact is disputed, I have endeavored to highlight the dispute.

A.    **Background Facts**

Plaintiff was incarcerated at Ware State Prison from May 14, 2020 until June 24, 2022. Doc. 99-3 at 21. At all times relevant to this action, Defendants served the following roles at Ware State Prison: Defendant Thrift was a correctional officer II, doc. 99-4 at 2; Defendant Szabo was a sergeant, doc. 99-5 at 2; Defendant Hammock was a unit manager, doc. 99-6 at 2;

Defendant Jones was a correctional officer I, doc. 99-7 at 2; Defendant Whitaker was a correctional officer II, doc. 99-8 at 2; Defendant Fairchild was a lieutenant, doc. 99-9 at 2; and Defendant Toole was a sergeant, doc. 99-10 at 2.

On the dates the events relevant to this action occurred, Plaintiff was housed in Tier II lockdown dorms.  Doc. 99-4 at 2.  Inmates in Tier II housing are not permitted to be out of their cells without authorization.  Id.  The doors to the cells have a "tray flap," a heavy steel slot that allows staff to issue items to inmates, receive items from inmates, and place or remove handcuffs without opening the door itself.  Id. at 3.  At all other times the tray flap is required to remain closed.  Id.  "Bucking the flap" is a term used to describe occurrences when an inmate interferes with the tray flap by propping it open, placing arms or hands through it, not allowing staff to close it, or otherwise obstructing it.  Id.  Bucking the flap is prohibited, and inmates have been known to throw dangerous or unsanitary items through tray flaps.  Id.

**B.    Incidents Related to Excessive Force, Failure to Intervene, and Deliberate Indifference**

**1.    February 15, 2022 tray flap incident.**[2]

On February 15, 2022, Defendant Thrift was making rounds in Tier II housing.  Doc. 99-3 at 27.  Plaintiff's arms were in the tray flap.  Id. at 29, 40.  As Defendant Thrift was making rounds, he closed tray flaps.  Doc. 99-4 at 3.  Defendant Hammock was aware that Plaintiff was bucking the flap and Defendant Thrift was closing flaps in the Tier II housing area.  Doc. 99-6 at 3.  Defendant Thrift closed the tray flap at Plaintiff's cell while Plaintiff's arms were in the tray flap.  Id.  Plaintiff alleges that Defendant Thrift slammed his arms in the flap and that Defendants

---

[2]    In the Complaint, Plaintiff alleges that this incident occurred on January 15, 2022.  Doc. 1 at 8.  However, both Plaintiff's SMF and Defendants' SMF state that the incident occurred on February 15, 2022.  Docs. 99-1 at 3, 103 at 4.  Plaintiff also clarified that the correct date was February 15, 2022, in deposition testimony.  Doc. 99-3 at 24.

Szabo and Hammock stood by and watched.  Doc. 99-3 at 28–29.  However, Defendant Thrift

stated in his declaration that Plaintiff "stuck his hand in" the tray flap as he was closing it to grab

him.  Doc. 99-4 at 3.  Defendant Szabo stated that he was unaware of any use of force on

February 15.  Doc. 99-5 at 3.  Defendant Hammock stated, "I have no knowledge of the force

described by Inmate Mobley."  Doc. 99-6 at 3.  Plaintiff asked to see medical but did not make a

sick call for any injuries he may have sustained on February 15, 2022.  Doc. 99-3 at 48, 50.

Plaintiff filed a grievance related to the February 15, 2022 incident.  Id. at 56–57.  As a result of

the grievance, Plaintiff was seen by medical, and medical staff reported no visible injuries or

deformities.  Id. at 61.

### 2. *April 19, 2022 tray flap incident.*[3]

On April 19, 2022, Plaintiff had his hand in the tray flap of his cell door.  Doc. 99-5 at 3.

Defendants Szabo, Jones, and Whitaker were present.  Doc. 99-5 at 4; Doc. 99-7 at 3; Doc. 99-8

at 3.  Defendant Szabo ordered Plaintiff to remove his hand from the tray flap.  Doc. 99-3 at 64.

Plaintiff refused to remove his hands.  Id. at 64–66.  Defendant Whitaker left to get a supervisor

and did not return.  Doc. 99-8 at 3.  Defendant Jones closed the tray flap.  Doc. 99-7 at 3.

Defendant Jones explained in his declaration that Plaintiff moved his hand before Defendant

Jones closed the flap.  Id.  However, Plaintiff stated in deposition testimony that Defendant Jones

slammed the flap onto his arm.  Doc. 99-3 at 66.  Plaintiff stated that Defendant Jones slammed

his arm one to three times.  Id.  Plaintiff did not put in a sick call to address any injuries.

Doc. 99-3 at 70.  Defendants Jones, Szabo, and Whitaker stated that they were not aware that

Plaintiff was injured in the incident.  Doc. 99-5 at 4; Doc. 99-7 at 3; Doc. 99-8 at 3.  Plaintiff

---

[3]    In the Complaint, Plaintiff alleges that this incident occurred on May 5, 2022.  Plaintiff clarified
in his deposition that the correct date for the incident is April 19, 2022.  Doc. 99-3 at 62.

filed a grievance related to the April 19, 2022 incident.  Id.  As a result of the grievance, Plaintiff

was assessed by medical, who reported no visible injuries from the incident.  Id. at 77.

### C.    Incidents Related to Retaliation

#### 1.    March 15, 2022 threat incident.

On March 15, 2022, Plaintiff had one pending grievance and no pending lawsuits.

Doc. 99-3 at 81.  On that date, Plaintiff alleges that Defendant Hammock entered his cell and

told him if he did not drop his grievance that she "will make my time at Ware State a living

hell."[4]  Doc. 1 at 12.  After March 15, 2022, Plaintiff filed two additional grievances related to

incidents that occurred on April 19 and April 25, 2025, and filed this lawsuit on September 15,

2022.  Id. at 83–84

#### 2.    April 25, 2022 legal paperwork incident.

On April 25, 2022, Defendants Thrift, Fairchild, and Toole went to Tier II housing

because inmates, including Plaintiff, were outside their cells without permission.  Doc. 99-3 at

85–86.  Defendants Thrift, Fairchild, and Toole determined that the door to Plaintiff's cell had

been tampered with.  Doc. 99-4 at 4; Doc. 99-10 at 6.  Defendants Thrift, Fairchild, and Toole

then initiated a "shakedown" of Plaintiff's cell.  Doc. 99-3 at 86.  As part of the shakedown,

Defendants Thrift, Fairchild, and Toole searched Plaintiff's cell and found contraband.  Doc. 99-

4 at 4.  Plaintiff alleges that Defendants stated, "[W]hat we're doing was retaliation."  Doc. 1 at

12.  Defendants deny this allegation or state they have no recollection of it.  Doc. 99-4 at 4; Doc.

99-9 at 3; Doc. 99-10 at 3.  In the cell, officers found an envelope containing broken pieces of

locks and legal documents.  Doc. 99-10 at 3.  Defendant Toole gave the legal documents to

Corrections Officer Walker.  Id.  Defendant Toole stated this was so Corrections Officer Walker

---

[4]    Plaintiff alleges Defendant Hammock also told Plaintiff to drop a lawsuit, but there is no
indication in the record that Plaintiff had a pending lawsuit at that time.

could return the documents to Plaintiff.  Id.  Plaintiff filed a grievance related to this incident but did not appeal the grievance.  Doc. 99-3 at 91–92.

### 3.    *May 24, 2022 pepper spray incident.*

On May 24, 2022, Defendants Szabo, Hammock, and Jones approached Plaintiff's cell door.  Doc. 99-3 at 101.  Plaintiff shared the cell with a cellmate.  Id. at 102.  Plaintiff stated in deposition testimony that his cellmate had his hands in the tray flap.  Id.  Defendants Jones, Szabo, and Hammock stated in a declaration that Mobley had his hands in the flap.  Doc. 99-5 at 4; Doc. 99-6 at 4; Doc. 99-7 at 4.  Defendants Jones, Szabo, and Hammock all instructed the inmate (whether the cellmate or Mobley) to remove his hand from the tray flap.  The inmate did not comply.  A fluid was ejected through the tray flap from inside the cell.[5]  Doc. 99-3 at 102. Defendants Szabo, Hammock, and Jones again instructed the inmate to remove his hands from the tray flap.  Doc. 99-5 at 11.  The inmate did not comply.  Id.  Defendant Szabo deployed pepper spray into the cell.  Id.  The inmates were instructed to "cuff up."  Doc. 99-3 at 105. Defendant Szabo again deployed pepper spray into the cell.  Id.  The inmates then complied and were cuffed.  Id.  The inmates were seen by medical and then returned to their cell.  Doc. 99-3 at 105–06.  Neither Defendants Szabo, Hammock, nor Jones uncuffed Plaintiff.  Doc. 99-5 at 5. Defendants Szabo, Hammock, and Jones informed the duty officer that Plaintiff and his cellmate were still restrained.  Id.  After the incident, Plaintiff was found guilty on a disciplinary report for obstructing staff, verbal/gesture threatening, and failure to follow instructions.  Id. at 27.

### LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[5]    Defendants testified that the fluid was "sour milk or urine."  Doc. 99-5 at 4; Doc. 99-6 at 4; Doc. 99-7 at 4.  Plaintiff testified during his deposition that it was sour milk.  Doc. 99-3 at 102.

Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the non-moving party] is merely colorable or is not significantly probative summary judgment must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the non-moving party's case or the nonmoving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences which can be drawn from the record in a light most favorable to the non-moving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

# DISCUSSION

## I.    Plaintiff's Excessive Force Claims

Plaintiff alleges that, on February 15, 2022, Defendant Thrift used excessive force by "slamming" his hands and forearms inside his cell's tray flap.  Doc. 1 at 8.  Plaintiff also alleges that, on April 19, 2022, Defendant Jones used excessive force by slamming the tray flap on his right forearm.  Id. at 9.  After frivolity review, the Court ordered service of Plaintiff's Eighth Amendment excessive force claims against Defendants Thrift, Szabo, Hammock, Jones, and Whitaker.[6]  Doc. 24.

Defendants Thrift and Jones argue they are entitled to summary judgment because the evidence shows that any force they used was needed to gain compliance with a prison rule, the force they used was directly related to the need, Plaintiff's injuries were not severe and were proportional to the need to use force, the perceived threat to staff and inmate safety was serious, and Defendants made efforts to temper the severity of force used.  Doc. 99-2 at 9–14.  Defendants Thrift and Jones also argue they are entitled to qualified immunity.  Id. at 24.

### A.    Legal Standard

The Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force prison officials are entitled to use against inmates.  Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  An excessive force claim has two requisite parts: an objective and a subjective component.  Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).  In order to satisfy the objective component, the inmate must show the prison official's conduct was

---

[6]    Plaintiff asserts excessive force claims against Defendants Szabo, Hammock, and Whitaker but does not allege any use of force by these Defendants.  Plaintiff has not satisfied a core element of an excessive force claim.  I **RECOMMEND** the Court **GRANT** summary judgment to Defendants Szabo, Hammock, and Whitaker on Plaintiff's Eighth Amendment excessive force claims.  To be clear, Defendants Szabo, Hammock, and Whitaker are named in several of Plaintiff's other claims.  These claims will be assessed below in turn.

"sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Subjectively, such "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'"  Burke v. Bowns, 653 F. App'x 683, 695 (11 Cir. 2016) (quoting Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002)); Pearson v. Taylor, 665 F. App'x 858, 863 (11th Cir. 2016) ("The 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Wilkins v. Gaddy, 559 U.S. 34, 37 (2010))).

To analyze the subjective component, the Eleventh Circuit Court of Appeals has "identified five factors to help evaluate whether force was applied maliciously or sadistically." Pearson, 665 F. App'x at 863; Burke, 653 F. App'x at 695.  The factors are: (1) the need for the exercise of force; (2) the relationship between the need for force and the force applied; (3) the extent of injury the inmate suffered; (4) the extent of the threat to the safety of staff and other inmates; and (5) any efforts taken temper the severity of a forceful response.  Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Any action taken should be viewed considering the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security.  Hudson v. McMillian, 503 U.S. 1, 6 (1992); Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009).  For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance,

and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time.").

### B.    Defendants' Use of Force Under the Subjective Prong

Defendants Thrift and Jones argue their use of force was necessary and proportional, that Plaintiff suffered only minor injuries, and that they made efforts to minimize the amount of force used.  Doc. 99-2 at 9–14.  As a reminder, Plaintiff claims Defendant Thrift used excessive force on February 15, 2022, and claims Defendant Jones used excessive force on April 19, 2022.  I address each of the subjective prong factors regarding these two incidents.

#### 1.    The need for the application of force.

Need for use of force arises when an inmate creates a disturbance.  Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990), abrogated on other grounds by Williams v. Radford, 64 F.4th 1185, 1198 (11th Cir. 2023).  Courts have found that "bucking the flap" constitutes the sort of disturbance that justifies the use of some force.  See Brockington v. Stanco, Case No. 5:14-cv-38, 2016 WL 4443204, at *3 (M.D. Ga. May 25, 2016) (finding that an inmate-plaintiff's refusal to remove his arms from the tray flap created a legitimate need for some use of force), report and recommendation adopted, 2016 WL 4445475 (M.D. Ga. Aug. 19, 2016).  However, courts have also found that force is not needed when a prison guard provides "no meaningful instructions or warnings" before slamming a tray flap on an inmate's hand, even in the context of a technical rule violation.  Rodriguez v. Powell, Case No. 5:17-cv-387, 2019 WL 2479301, at *8 (M.D. Ga. Jan. 31, 2019), report and recommendation adopted, 2019 WL 1237146 (M.D. Ga. Mar. 18, 2019); see Wright v. Sprayberry, Case No. 4:22-cv-97, 2025 WL 824340, at *7 (N.D. Ga. Mar. 14, 2025) (denying summary judgment and finding that, when summary judgment is granted in excessive force cases involving tray flaps, the plaintiff's "stubborn disregard of an officer's clear

order to remove his hands from the flap" is what justifies the use of force); compare Hines v. Cotton, 7:20-CV-240, 2022 WL 2980889, at *4 (M.D. Ga. June 23, 2022) (granting summary judgment, noting that closing a tray door on an inmate's arm is "an appropriate amount of force, *given that the inmate refused to follow orders.*") (emphasis added) (citing Johnson v. Moody, 2006 F. App'x 880 (11th Cir. 2006)), report and recommendation adopted, 2022 WL 2980687 (M.D. Ga. July 27, 2022); Driver v. Novy, Civ. Action No. 6:15-cv-55, 2017 WL 2313005, at *3 (S.D. Ga. Mar. 22, 2017) (finding that a defendant needed to use some force to secure a cell door tray flap "particularly in the face of Plaintiff's repeated refusal"), report and recommendation adopted, 2017 WL 2312835 (S.D. Ga. May 26, 2017).

The undisputed material facts here show that, on both February 15, 2022, and April 19, 2022, Plaintiff had his arms in the tray flap of his cell (i.e. "bucking the flap.").  Bucking the flap is prohibited at Ware State Prison.

*February 15, 2022 Incident.*  On February 15, 2022, Defendant Thrift closed Plaintiff's tray flap while Plaintiff was bucking the flap, though the parties disagree about whether Defendant Thrift was aware that Plaintiff's arms were in the flap at the time and how many times Defendant Thrift shut the tray flap on Plaintiff's arms.  For this incident, a genuine dispute of material fact exists as to whether Defendant Thrift needed to use any force.  In his Declaration, Defendant Thrift states that, as he was closing the flap, Plaintiff "bucked the flap and tried to grab" him.  Doc. 99-4 at 3.  In his deposition testimony, however, Plaintiff stated that Defendant Thrift repeatedly (five to six times) slammed Plaintiff's arms in the tray flap without any warning.  Doc. 99-3 at 27–28.  Therefore, this factor weighs against Defendant Thrift.

*April 19, 2022 Incident.*  On April 19, 2022, Plaintiff refused orders to remove his arms from the tray flap before any force was used.  Plaintiff testified that Defendant Jones slammed

the tray flap closed on Plaintiff's arm and hand; Jones states he did not use any force and

Plaintiff's arm and hand were clear of the tray flap.  Even so, it is undisputed that Defendant

Jones explicitly warned Plaintiff to remove his hands from the tray flap before closing it.

Plaintiff admitted: "This time I was refusing to take my arm out of the flap." Id. at 63.  Because

Plaintiff directly refused an order from Defendant Jones, Defendant Jones was justified in using

some force to remedy the disturbance.  See Bennett, 898 F.2d at 1533 ("Prison guards may use

force when necessary to restore order and need not wait until disturbances reach dangerous

proportions before responding.").  This factor cuts in Defendant Jones's favor.

### 2.      *Relationship between the need for force and the force applied.*

*February 15, 2022 Incident.*  Given the genuine dispute about whether Defendant Thrift

needed to use force, there is also a genuine dispute about whether the amount of force used was

proportional to the need.  This is particularly so given that the parties disagree about how much

force Defendant Thrift used.  Defendant Thrift stated in a sworn declaration that he closed the

tray flap door once.  Doc. 99-4 at 3.  Plaintiff testified that Thrift closed the flap five to six times.

Doc. 99-3 at 27–28.  This factor cuts against Defendant Thrift.

*April 19, 2022 Incident.*  Regarding the April 19, 2022 incident, the relationship between

the need for force and the force applied cuts in favor of Defendant Jones.  As noted above,

Plaintiff admitted to refusing orders to remove his arms from the tray flap.  The force used

constituted closing the tray flap one to three times.  Doc. 99-3 at 63–64.  Plaintiff was

undisputedly breaking a rule, Defendant Jones ordered Plaintiff to stop breaking the rule, and

Plaintiff refused.  Therefore, Defendant Jones's use of force was proportional to the need.

See Johnson v. Moody, 206 F. App'x 880 (11th Cir. 2006) (finding that a guard who kicked a

tray door shut onto the plaintiff's arm after ordering the plaintiff to stop did not use excessive force).  This factor weighs in Defendant Jones's favor.

### 3.    *The extent of Plaintiff's injuries.*

The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied."  <u>Logan v. Smith</u>, 439 F. App'x 798, 800 (11th Cir. 2011) (citing <u>Wilkins</u>, 559 U.S. at 37).  While the resulting injury can be indicative, the key inquiry is the amount of force applied by a defendant, not the severity of the injury that resulted to a plaintiff. <u>Id.</u> at 800–01 (citing <u>Wilkins</u>, 559 U.S. at 37).  Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 38 (2010).

**February 15, 2022 Incident.**  The extent of Plaintiff's injuries does not weigh in favor of either Plaintiff or Defendant Thrift.  Plaintiff alleges that he lost all feeling in his right hand and that he suffered three puncture wounds, a fractured thumb, and multiple lacerations to his right wrist.  Doc. 1 at 8.  Defendants point out that Plaintiff was assessed by a nurse on March 16, 2022, and the nurse assessed no injuries.  Doc. 99-1 at 3; Doc. 99-3 at 60–61.  This presents a clear dispute about how severe Plaintiff's injuries were after the February 15, 2022 incident.  But even taking Plaintiff's view of the severity of injuries as true, the evidence does not demonstrate severe injuries.

**April 19, 2022 Incident.**  The extent of Plaintiff's injuries arising from the April 19, 2022 incident does not weigh in favor of either Plaintiff or Defendant Jones.  Plaintiff alleges that he permanently lost feeling in his right hand and that his fingertips were cut "deep almost to the

bone." Doc. 1 at 9. Plaintiff produced medical evidence, which appears focused solely on the April 19, 2022 incident involving Defendant Jones. See Doc. 103-3 at 2 (stating in a medical report on June 10, 2022, "My right hand was slammed in a tray slot about a month and a half ago."). According to these records, medical providers found only a right hand contusion and recommended strengthening exercises and ibuprofen. Doc. 103-3 at 3. By Plaintiff's admission, medical staff told him to squeeze a sock to address any numbness but did not recommend other treatment. Doc. 99-3 at 68. The evidence in the record is limited, but it demonstrates an open dispute between the parties about the extent of Plaintiff's injuries. Even taking Plaintiff's view of the severity of injuries as true, the evidence does not demonstrate severe injuries.

### 4. *The extent of the threat to the safety of staff and other inmates.*

Courts have recognized a legitimate safety interest in keeping tray flaps closed. See Moore v. James, No. 7:09-CV-98, 2013 WL 1296775, at *1 (M.D. Ga. Mar. 27, 2013) (recognizing important safety interests in keeping tray flaps closed when not in use). In addition, even non-dangerous disturbances can escalate, and prison staff are not required to "wait until disturbances reach dangerous proportions before responding." Bennett v. Parker, 898 F.2d at 1530. Plaintiff also acknowledged that inmates at Ware State Prison throw fluids and at times attempt to stab officers through tray flaps, demonstrating the threat to safety posed by open tray flaps. Doc. 99-3 at 46–47.

*February 15, 2022 Incident.* Plaintiff undisputedly had his arms in the tray flap of his cell during this incident. The cell's open tray flap posed a threat to inmate and staff safety. Additionally, Plaintiff's actions diverted Defendants' attention away from maintaining the facility's security. This factor cuts in Defendant Thrift's favor.

*April 19, 2022 Incident.* Plaintiff undisputedly had his arms in the tray flap of his cell during this incident. Additionally, Plaintiff was refusing an order at the time the force was used, which increased the threat to safety of inmates and staff. Brockington v. Stanco, No. 5:14-cv-38, 2016 WL 4443204, at *5 (M.D. Ga. May 25, 2016) (citing Danley v. Allen, 540 F.3d 1298, 1308 (11th Cir. 2008); McClendon v. Smith, No. 7:12-CV-154, 2014 WL 575538, at *6 (M.D. Ga. 2014)). This factor cuts in Defendant Jones's favor.

### 5.    *Efforts taken to temper the severity of a forceful response.*

This factor is neutral for both incidents. Courts generally look for some affirmative action taken by the defendant when interpreting this factor. See Cockrell v. Sparks, 510 F.3d 1307, 1312 (11th Cir. 2007) (noting that the defendants tempered the severity of their response when they "immediately summoned medical assistance" for the plaintiff); Fennell, 559 F.3d at 1220 ("The immediate offer of medical assistance shows an effort to temper the severity of the use of force."). Here, there is no evidence that Defendants Thrift or Jones took affirmative steps to temper their responses, but there is also no evidence that they had the opportunity to do so. Thus, this factor cuts in neither side's favor.

After considering the relevant factors for evaluating the subjective prong, I conclude Defendant Thrift is not entitled to summary judgment based purely on the subjective prong for claims arising from the February 15, 2022 incident. I, therefore, proceed below with assessing the objective prong related to the February 15, 2022 incident.

On the other hand, Defendant Jones is entitled to summary judgment for the claims related to the April 19, 2022 incident. For Defendant Jones, every relevant factor for evaluating the subjective prong is neutral or cuts in Defendant Jones's favor. Because Plaintiff cannot

18

satisfy the subjective component of an Eighth Amendment excessive force claim, summary

judgment should be granted to Defendant Jones.[7]

### C. Defendant Thrift's Use of Force Under the Objective Prong

To satisfy the objective prong of an excessive force claim, a plaintiff must show that the

conduct in question was "harmful enough to establish a constitutional violation." Sconiers, 946

at 1256. This is an objective standard, "responsive to contemporary standards of decency."

Moore v. Hunter, 847 F. App'x 694, 697 (11th Cir. 2021). Injuries need not be significant to

satisfy this standard, though "the extent of injury may . . . provide some indication of the amount

of force applied." Wilkins, 559 U.S. at 37. "An inmate who is gratuitously beaten by guards

does not lose his ability to pursue an excessive force claim merely because he has the good

fortune to escape without serious injury." Id. at 38.

Here, Plaintiff alleges that Defendant Thrift repeatedly slammed the tray flap on his

hands and arms with no warning and no commands to take any action. The parties dispute

whether Plaintiff suffered a serious injury as a result of the February 15 incident, but the "core

judicial inquiry" is based on the nature of the force and whether it was applied maliciously and

sadistically, not the extent of the injury. See Pearson, 665 F. App'x at 863. Based on this

record, a reasonable jury could find that repeatedly slamming a tray flap on an inmate's hands

with no commands to the inmate to remove his hands violates contemporary standards of

decency and, therefore, could violate Plaintiff's right to be free from excessive force.

---

[7]    Because I have determined that Plaintiff's claim against Defendant Jones fails to satisfy the
subjective prong of the analysis, I do not analyze whether Defendant Jones's use of force was objectively
excessive.

### D.    Qualified Immunity for Defendant Thrift

Defendant Thrift also argues he entitled to qualified immunity on Plaintiff's excessive force claim.  Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002).  For qualified immunity to apply, the official must establish that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009) (citation omitted).  If the official shows he was acting within the scope of his discretionary authority, then the burden shifts to the plaintiff to "show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009) (quoting Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). The "salient question" at this stage "is whether the state of the law at the time of the incident gave the [the officer] fair warning that his conduct was unlawful." Perez v. Suszcynski, 809 F.3d 1213, 1222 (11th Cir. 2016) (citation and marks omitted).

As an initial matter, it appears to be undisputed that Defendant Thrift was acting within the scope of his discretionary authority at the time the alleged excessive force claims arose. Doc. 99-2 at 25.  Because Defendant Thrift was acting within the scope of his discretionary authority, Plaintiff must show that Defendant Thrift violated a constitutional right and that the right was clearly established at the time of the alleged violation.  Plaintiff has not attempted to rebut Defendants' qualified immunity arguments, and so he necessarily has not met his burden.

Even if he had, however, Defendant Thrift's alleged conduct does not violate clearly stablished law.[8]

A plaintiff can show a violation of clearly established law in three ways.  First, the plaintiff "can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." Stalley v. Cumbie, 124 F.4th 1273, 1284 (11th Cir. 2024) (citation omitted).  The focus of this inquiry is whether the "relevant case law at the time of the violation would have made it obvious to the officer that his actions violated federal law." Id.  Caselaw "need not be directly on point, but an existing precedent must have placed the statutory or constitutional question beyond debate." Id.  Second, a plaintiff "can identify a broader, clearly established principle that should govern the novel facts of the situation." Id.  Third, the plaintiff "can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." Id.  The conduct must lie "so obviously at the core of what the alleged constitutional amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." Id.  "This third method . . . is a narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation." Id.

Here, Plaintiff has not pointed to any materially similar binding cases that had been decided at the time of the relevant conduct (February and April 2022).  Indeed, Plaintiff has made no discernible effort to identify any materially similar case.  Additionally, the undersigned has not identified any binding authority that is factually analogous to the facts before the Court.[9]

---

[8]    Because it is my conclusion that a genuine dispute of material fact exists regarding the constitutional violation, I do not address that part of the qualified immunity analysis.

[9]    I acknowledge the Eleventh Circuit's unpublished decision in Johnson v. Moody, 206 F. App'x 880 (11th Cir. 2006).  That decision offers little or no guidance on clearly established law since it is

As to clearly established principles, it is clear that "the unjustified use of excessive force by a prison guard against an inmate" can violate the Eighth Amendment.  Davis v. Locke, 936 F.2d 1208, 1213 (11th Cir. 1991).  Further, "[t]he basic legal principle is that once the necessity of the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments."  Ort, 813 F.2d at 327.  These principles are far too broad to establish that Defendant Thrift would be on notice that his conduct was unlawful, however.  If they did, then the "clearly established" inquiry would lose all meaning.  It is undisputed that Plaintiff was bucking the flap when the incident occurred.  It is further undisputed that bucking the flap violates prison rules and that Plaintiff knew bucking the flap violates prison rules.  Thus, it appears undisputed that Defendant Thrift was utilizing force to obtain Plaintiff's compliance with prison rules, which all agree were in place to ensure safety and security in the prison.  No clearly established principle suggests that the level of force Defendant Thrift used in these circumstances violates the Eighth Amendment.

The third method applies only where the defendant's conduct lies "so obviously at the core of what the alleged constitutional amendment prohibits that the unlawfulness of the conduct was readily apparent to the officer . . . ."  Stalley, 124 F.4th at 1284.  The third method "is a narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation."  Id.  Defendant Thrift's alleged conduct does not lie so obviously at the core of what the Eighth Amendment prohibits that its unlawfulness "was readily apparent to the officer."  Id.  The facts are not "so far beyond the hazy border between excessive and acceptable

---

unpublished.  However, I note that in that decision, the trial court granted summary judgment to a defendant accused of very similar conduct (i.e., shutting a metal tray door on an inmate's hand), concluding that the defendant did not use excessive force.  The Eleventh Circuit affirmed.  Thus, the decision in Johnson indicates that Defendant's Thrift did not violate clearly established law by engaging in similar conduct.

force that the officer had to know he was violating the Constitution even without caselaw on point." Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002).

Because Plaintiff has not demonstrated that Defendant Thrift's alleged conduct constituted a clearly established violation of law, Defendant Thrift is entitled to qualified immunity.[10] In sum, I **RECOMMEND** the Court **GRANT** summary judgment to Defendants Thrift and Jones on Plaintiff's excessive force claims.

## II.    Failure to Intervene

Plaintiff asserts Eighth Amendment failure to intervene claims based on the February 15, 2022 incident and the April 19, 2022 incident. Plaintiff alleges that Defendants Szabo and Hammock were present on February 15 and refused to help him. Doc. 1 at 8; Doc. 99-3 at 31. Plaintiff similarly alleges that Defendants Szabo and Whitaker were present at the April 19 incident and refused to help him. Doc. 1 at 9. Defendants argue that Plaintiff's failure to intervene claims fail because Plaintiff has failed to establish a claim for excessive force. Doc. 99-2 at 15. Defendants argue that, even assuming the presence of excessive force, no Defendant had any need or opportunity to intervene. Id. Defendants also argue they are entitled to qualified immunity. Id. at 24.

Defendants are entitled to qualified immunity. It is undisputed that these Defendants were performing a discretionary duty at the time of the February 15, 2022 incident. As explained above, none of Plaintiff's excessive force claims survive summary judgment. When proving a failure to intervene claim, the plaintiff bears the burden of demonstrating "the defendant was in a

---

[10]    Because I have concluded that no constitutional violation occurred during April 19, 2022 incident, I have not addressed whether Defendant Jones's conduct constituted a clearly established violation of law. I note, however, that the facts alleged about Defendant Jones's conduct militate even more strongly in favor of qualified immunity than Defendant Thrift's conduct. It is undisputed that Defendant Jones warned Plaintiff to remove his arms from the flap and Plaintiff refused. Thus, Defendant Jones would be entitled to qualified immunity, even if Plaintiff established a constitutional violation.

position to intervene but failed to do so." Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (citing Hadley v. Gutierrez, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).  A claim for failure to intervene involves an officer's failure "to take reasonable steps to protect the victim of another officer's use of excessive force."  Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (citation omitted).  Thus, a successful claim for failure to intervene in the context of excessive force "requires an act of excessive force by the perpetrating officer in the first instance."  Ireland v. Prummell, 53 F.4th 1274, 1301 (11th Cir. 2022).   Under these facts, without excessive force, there can be no claim for failure to intervene.  Therefore, Plaintiff has not established a constitutional violation.

I **RECOMMEND** the Court **GRANT** summary judgment to Defendants Thrift, Jones, Szabo, Whitaker, and Hammock for Plaintiff's failure to intervene claims.

### III.    Deliberate Indifference

Plaintiff asserts Eighth Amendment deliberate indifference claims against Defendants Thrift, Szabo, Hammock, Jones, and Whitaker for their failure to ensure Plaintiff received medical treatment for the use of force incidents. Doc. 24.  Defendants argue that Plaintiff has not demonstrated a sufficiently serious medical need to prevail on a claim for deliberate indifference. Doc. 99-2 at 16.  Even if Plaintiff's injuries were sufficiently serious, Defendants argue that Plaintiff cannot show that they (Defendants) were subjectively aware of Plaintiff's serious medical need.  Id.  Defendants argue that Plaintiff cannot demonstrate causation between any alleged deliberate indifference and his alleged injuries.  Id.  Finally, Defendants argue they are entitled to qualified immunity on the deliberate indifference claims.  Id. at 25.

## A.    Legal Standard

The Eighth Amendment "prohibits 'deliberate indifference to serious medical needs of prisoners.'"  Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 103–04 (1976)).  To prove a claim of deliberate indifference to medical needs, a plaintiff must show: (1) an objectively serious medical need; and (2) that the defendant acted with deliberate indifference to that need.  Collins v. Ferrell, No. 21-14027, 2024 WL 4677418, at *3 (11th Cir. Nov. 5, 2024) (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quoting Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  The second element—defendant's deliberate indifference—requires a showing of a "sufficiently culpable state of mind."  Id. (quoting Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024)).  To show deliberate indifference, the plaintiff must show the defendant: (i) had subjective knowledge of a risk of serious harm; (ii) disregarded that risk; and (iii) acted with "subjective recklessness as used in criminal law."  Id.  However, even if the defendant knew of a substantial risk to inmate health or safety, the defendant will not be liable if he "responded reasonably to the risk."  Id.  Whether a defendant "responded reasonably" is assessed on an objective basis.  Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (Jordan, J., concurring).

## B.    Plaintiff Presents a Question of Material Fact Regarding the Deliberate Indifference Claims

### 1.    Objectively serious medical need.

A serious medical need is one that, if left unattended, poses a substantial risk of serious harm.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citation omitted).  To

demonstrate this need, a plaintiff can show that the injury was "diagnosed by a physician as mandating treatment or . . . was so obvious that even a lay person would recognize the necessity for a doctor's attention." Id. (citation omitted).  Alternatively, a plaintiff can demonstrate that a medical need is sufficiently serious by showing that a "delay in treating the need worsens the condition." Id.  Plaintiff has made either showing.

Plaintiff alleges deep lacerations, fractures, and numbness resulting from the February 15, 2022 and April 19, 2022 excessive force incidents.  Doc. 1.  Plaintiff alleges that medical staff did not assist him when he was injured, and he admitted in deposition testimony that he never put in a sick call for his injuries.  Doc. 99-3 at 50, 70.  Plaintiff explained that he self-diagnosed and self-treated.  Id. at 54–55, 68–69.  When Plaintiff filed grievances about the incidents, medical staff evaluated him and assessed no injuries.  Id. at 59, 66, 75; Doc. 46-6 at 7–8.  Plaintiff submitted medical records in his Response.  These medical records indicate that, on June 10, 2022, he was prescribed strengthening exercises and ibuprofen, but no additional treatment.  Doc. 103-3 at 3.

A genuine dispute of material fact exists as to whether Plaintiff exhibited an objectively serious medical need.  As explained above, Plaintiff alleges severe injuries to his hands and wrists.  The medical records indicate that Plaintiff's wounds were minor at the time he was seen, and courts sometimes find that bleeding wounds do not constitute an objectively serious medical need.  See Levieve v. Oroso, 846 F. Supp. 2d 1294, 1304 (S.D. Fla. 2012) (finding that a plaintiff who was kicked and stomped to the point of bleeding did not suffer a serious medical need when the plaintiff was immediately released after treatment); Franklin v. Nousiainen, Case No. 3:21cv00798, 2023 WL 9316128, at *4 (N.D. Fla. Oct. 10, 2023) (finding that the plaintiff's lacerations, swelling, and bruising were not objectively serious) (citing Fernandez v. Metro Dade

Police Dep't, 397 F. App'x 507, 514 (11th Cir. 2010)). Here, however, the medical records produced were from June 2022, several months after the alleged incidents. Doc. 103-3. It is unclear how severe Plaintiff's wounds were at the time they occurred. Taking Plaintiff's sworn allegations as true, a genuine question of fact exists about whether the Plaintiff's injuries constituted an objectively serious medical need.

### 2. *Deliberate indifference.*

#### (a) *Subjective knowledge of the risk of harm.*

To possess subjective knowledge of a risk of serious harm, a defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . must also draw the inference." Stone v. Hendry, 785 F. App'x 763, 768 (11th Cir. 2019) (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). To create a genuine issue of material fact, the record must contain evidence "albeit circumstantial" of such subjective awareness. Daniels v. Jacobs, 753 F. App'x 748, 757 (11th Cir. 2018) (quoting Melton v. Abston, 841 F.3d 1207, 1224 (11th Cir. 2016)).

The evidence in the record shows a genuine dispute of fact about whether Defendants Thrift, Szabo, Hammock, Jones, and Whitaker had subjective knowledge of the risk of harm to Plaintiff.

Regarding the February 15, 2022 incident, Plaintiff alleges in the Complaint that Defendant Thrift attacked him and that Defendants Szabo and Hammock watched as he screamed for help. Doc. 1 at 8. Defendant Thrift's subjective knowledge is clear due to his alleged creation of the risk in the first place, and Defendants Szabo and Hammock's subjective awareness is similarly clear due to their alleged witnessing of the incident.

27

As for the April 19, 2022 incident, Plaintiff alleges that Defendants Jones, Szabo, and Whitaker "walked away laughing" as he asked for medical attention.  Id. at 9.  According to Plaintiff, Defendants stated as they walked away, "he['s] tough, he can handle it.  Hell, people get injured every day, it's just how life work[s]."  Id.  Taking these facts in the light most favorable to Plaintiff, there is a clear issue of fact as to Defendants' subjective knowledge.

> *(b)*     *Disregard of the risk.*

A genuine issue of material fact exists as to disregard of the risk.  Plaintiff alleges that, on February 15, 2022, Defendants Szabo, Hammock, and Thrift did nothing to help him or to treat his injuries.  Doc. 1 at 8.  Plaintiff makes similar allegations as to Defendants Szabo, Jones, and Whitaker for the April 19, 2022 incident.  Id. at 9.  There is no indication that any Defendant, assuming their subjective awareness, took any step to address that risk.  Therefore, a genuine question of material fact exists about whether any defendant disregarded the risk to Plaintiff of further harm.

> *(c)*     *Subjective recklessnes*s.

To demonstrate subjective recklessness, a plaintiff must show that "the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm."  Wade, 106 F.4th at 1253.  A defendant does not act with subjective recklessness "if he responded reasonably to the risk."  Id. at 1262 (Jordan, J., concurring).

Here, a genuine question of fact exists as to whether any Defendant actually knew that his conduct put Plaintiff at substantial risk of serious harm.  As stated above, Plaintiff alleges that, on February 15, 2022, Defendant Thrift attacked him and that Defendants Szabo and Hammock watched.  Doc. 1 at 8.  Plaintiff testified in deposition testimony that Defendants Szabo and Hammock used a camera.  Doc. 99-3 at 29.  He testified further that Defendants Szabo and

Hammock disregarded his wounds and blocked him from getting access to medical care.  Id. at 43.  Plaintiff alleges that, on April 19, 2022, Defendants Jones, Szabo, and Whitaker laughed and walked away from him while he was injured.  Doc. 1 at 9.  Plaintiff further alleges that Defendants Jones, Szabo, and Whitaker stated, "[H]e['s] tough, he can handle it.  Hell, people get injured every day, it's just how life work[s]."  Id.  Taking these allegations as true, a question of fact exists about whether any Defendants actually knew that their conduct put Plaintiff at risk of serious harm.

### 3.    Whether Defendants caused Plaintiff's injuries.

Regarding causation, Plaintiff alleges that Defendants' actions directly caused his injuries.  Doc. 1 at 8, 9.  Defendants dispute this, arguing "[n]othing about this contention can support Plaintiff's allegation that these Defendants disregarded Plaintiff's alleged serious injuries when medical was already on the way."  Doc. 99-2 at 19.  Taking Plaintiff's allegations as true, the Defendants who allegedly struck him caused the injuries directly and the Defendants who allegedly watched and did not render or obtain medical aid exacerbated the injury by prolonging the time until treatment.  Therefore, the record demonstrates a genuine dispute of fact about whether any Defendant caused Plaintiff's injuries.

### C.    Qualified Immunity

As explained above, if a defendant can establish that he was acting within the scope of his discretionary authority when the alleged wrongful conduct occurred, the burden shifts to the plaintiff to demonstrate that the defendant both violated a constitutional right and that the right was clearly established at the time of the alleged violation.  Whittier, 581 F.3d at 1307–08.  A right is clearly established by a binding materially similar caselaw, by a clearly established principle, or by a showing that the conduct is so obviously at the core of what the constitution

29

prohibits that the unlawfulness of the conduct was readily apparent to the officer.  Stalley, 124 F.4th at 1284.

As above, Plaintiff has not attempted to meet his burden here.  Plaintiff has pointed to no materially similar caselaw or established principles.  I am also unaware of any materially similar published case that would give Defendants fair warning that their alleged conduct was unconstitutional.  Further, no clearly established principle proscribes the conduct alleged. Clearly, deliberate indifference to a serious medical need violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  See Wade v. United States, 13 F.4th 1217, 1225 (11th Cir. 2021) ("A prison official's 'deliberate indifference to serious medical needs of prisoners' constitutes cruel and unusual punishment.") (quoting Estelle, 429 U.S. at 104).  But these principles merely demonstrate that prison officials can be held liable for deliberate indifference in certain circumstances.  There is no clearly established principle that encompasses this circumstance, however.  Finally, Defendants' alleged conduct was not so obviously at the core of an Eighth Amendment deliberate indifference violation that its unlawfulness was readily apparent.  Defendants are entitled to qualified immunity.

Therefore, I **RECOMMEND** the Court **GRANT** summary judgment to Defendants Thrift, Szabo, Hammock, Jones, and Whitaker on Plaintiff's deliberate indifference claims.

## IV.    First Amendment Retaliation Claims

Plaintiff asserts retaliation claims against Defendants Thrift, Szabo, Hammock, Jones, Fairchild, and Toole.  Doc. 23.  Plaintiff identifies three retaliation incidents.  First, Plaintiff alleges that, on March 15, 2022, Defendant Hammock threatened Plaintiff by stating that if he did not drop his grievance and lawsuit, she would make his "time at Ware State a living hell." Id. at 12.  Second, Plaintiff alleges that, on April 25, 2022, Defendants Thrift, Fairchild, and

Toole entered his cell and removed his legal paperwork and documents out of retaliation. Third, Plaintiff alleges that on May 24, 2022, Defendants Szabo, Hammock, and Jones approached Plaintiff's cell. Defendant Szabo pepper sprayed inside the cell. Plaintiff was then removed from the cell. When he was returned, he was left restrained for almost 12 hours. Id.

Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claims. Defendants first argue that the record contradicts Plaintiff's claims. Doc. 99-2 at 20–21. Next, Defendants argue that Plaintiff cannot show he was deterred from protected speech by any alleged retaliatory acts. Id. at 21. Defendants then argue that Plaintiff cannot prove that any Defendant acted with a retaliatory motive. Id. at 22. Finally, Defendants argue that they are entitled to qualified immunity. Id. at 26.

A.    **Legal Standard**

It is well-settled that "[p]rison officials may not retaliate against inmates for filing lawsuits or administrative grievances." Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008). Such retaliation implicates both an inmate's right of access to courts and an inmate's First Amendment freedom of speech. Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989). Retaliation, in and of itself, is a constitutional violation. Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). To successfully state a retaliation claim, a plaintiff must allege three elements: (1) his speech was constitutionally protected; (2) the defendant's retaliation adversely affected the protected speech; and (3) a causal connection between the retaliation and the adverse effect on the speech. Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).

**B.    Whether Plaintiff's Retaliation Claim Presents a Genuine Dispute of Material Fact**

   *1.    Whether Plaintiff engaged in protected speech.*

It is undisputed that Plaintiff filed various grievances, which constitute protected speech. Plaintiff filed one grievance after the February 15, 2022 tray flap incident. Doc. 99-3 at 56–57. Plaintiff filed a second grievance after the April 19, 2022 tray flap incident. Id. at 70. Therefore, there is evidence to support the first element of Plaintiff's retaliation claim. See Christmas v. Nabors, 76 F.4th 1320, 1334 (11th Cir. 2023) (finding that a plaintiff who files grievances engages in protected speech).

   *2.    Whether protected speech was adversely affected.*

As to the second element, there is a genuine dispute of material fact. To satisfy this element, a plaintiff must show that "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1246, 1250 (11th Cir. 2005). This is an objective inquiry that does not ask whether the particular plaintiff was actually deterred. Id. However, whether the plaintiff was deterred can be illustrative of what a person of ordinary firmness would do. See Mitchell v. Thompson, 564 F. App'x 452, 457 (11th Cir. 2014) (finding that a plaintiff's continued filing of grievances after an alleged retaliatory act illustrated "that a person of ordinary firmness would likely not be deterred from engaging in such speech.").

As stated above, Plaintiff filed a grievance after the February 15, 2022 tray flap incident. Plaintiff alleges that the first retaliatory act—Defendant Hammock's threat—occurred on March 15, 2022. Plaintiff filed another grievance after the April 19, 2022 tray flap incident. Plaintiff alleges that the second retaliatory act—Defendants Thrift, Fairchild and Toole's confiscation of his documents—occurred on April 25, 2022. Plaintiff alleges the final retaliatory incident—

where he alleges that he was pepper sprayed and restrained for 12 hours—occurred on May 24, 2022. Plaintiff filed this lawsuit on September 15, 2022.

(a)    <em>The March 15, 2022 incident.</em>

Plaintiff's allegations that, on March 15, 2022, Defendant Hammock threatened him, could deter a person of ordinary firmness from engaging in protected speech, even if Plaintiff himself was not deterred. See Pittman v. Tucker, 213 F. App'x 867, 870–71 (11th Cir. 2007) (finding that threats made by prison officials can deter a person of ordinary firmness from filing grievances).

(b)    <em>The April 25, 2022 incident.</em>

Plaintiff's allegation that, on April 25, 2022, Defendants entered his cell and took his legal documents does not raise a question of material fact, however. It appears undisputed that Defendants took multiple items from Plaintiff's cell as contraband. It appears undisputed that Defendants did discover contraband. It also appears undisputed that confiscation is standard practice when prison officials uncover contraband. It appears undisputed as well that, once Defendants realized that they had confiscated legal documents, they gave them to an officer to return to Plaintiff, also in keeping with standard practice. These facts, if true, would not deter a person of ordinary firmness from engaging in protected speech. If prison officials confiscate contraband from an inmate and then take steps to return legal documents, there is no apparent deterrent effect.

(c)    <em>The March 15, 2022 incident.</em>

Plaintiff alleges that, on May 24, 2022, Defendants pepper sprayed him and left him restrained for almost 12 hours. Those facts, if true, would certainly deter a person of ordinary firmness from engaging in protected speech. See, e.g., Benton v. Rousseau, 940 F. Supp. 2d

33

1370, 1377 (M.D. Fla. 2013) (finding that pepper spray and beatings could deter a person of ordinary firmness). Plaintiff has raised a genuine question of material fact as to this incident.

### 3.    *Whether a causal connection exists.*

To prevail on a retaliation claim, a plaintiff must demonstrate a causal connection between the alleged retaliation and protected speech. To do this, the plaintiff must show that the defendant was "subjectively motivated to discipline the plaintiff" due to his exercise of protected speech. Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). If the plaintiff can establish "that his protected conduct was a motivating factor behind any harm," the defendant can still prevail by showing "that he would have taken the same action in the absence of the protected activity." Smith, 523 F.3d at 1278 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). Here, Plaintiff has presented a question of fact regarding causal connection between some actions and a retaliatory intent. I address each Defendant below, grouping claims by incident.

### (a)    *The March 15, 2022 incident.*

Plaintiff alleges that, on March 15, 2022, Defendant Hammock threatened him so that Plaintiff would drop his pending grievances and lawsuit. Doc. 1 at 12. Specifically, Plaintiff alleges that Defendant Hammock threatened to make his time at Ware State Prison "a living hell." Id. Plaintiff also alleges that Defendant Hammock was present on May 24, 2022, when Defendant Szabo sprayed pepper spray into Plaintiff's cell through the tray flap. Doc. 99-3 at 101. Plaintiff does not make any other factual allegations in support of retaliation claim against Defendant Hammock. Regarding the March 15, 2022 incident, a genuine dispute of material fact exists. If Plaintiff's allegation is true, a causal connection exists between the retaliatory act (the threat) and a retaliatory intent (to stop Plaintiff from filing grievances).

(b)    *The April 25, 2022 incident.*

Plaintiff alleges that, on April 25, 2022, Defendants Thrift, Toole, and Fairchild entered his cell and took his legal documents out of retaliation for Plaintiff's filing of grievances. Doc. 1 at 12. I have already determined that a person of ordinary firmness would not be deterred in this context. But the undisputed material facts also demonstrate that these Defendants had an independent reason for being present at Plaintiff's cell and likely would have taken the actions they did even if Plaintiff had not filed any grievances.

Plaintiff alleges that Defendants told him they were confiscating his papers out of retaliation. However, Plaintiff admitted in his deposition that he was outside of his cell and that he was not authorized to be out of his cell. Doc. 99-3 at 85. Defendant Thrift stated in a sworn declaration that he went to Plaintiff's cell because Plaintiff was outside the cell and that he searched Plaintiff's cell because there was evidence the cell door lock had been tampered with. Doc. 99-4 at 4. Defendant Fairchild stated in sworn testimony that all contraband recovered from shakedowns is given to supervisors. Doc. 99-9 at 3. Defendant Toole stated in sworn testimony that various items of contraband were found in Plaintiff's cell and confiscated. Defendant Toole also stated that the legal papers were given to "CO Walker" to be returned to Plaintiff. Doc. 99-10 at 3. In addition, the disciplinary report from the incident in question shows that Plaintiff was found guilty of both attempted escape and tampering with the cell door lock. Doc. 99-10 at 6.

Plaintiff has raised questions of fact about whether Defendants had a retaliatory motive and about whether Defendants actually gave the documents to a corrections officer intending to return the documents to him. However, Defendants have, in turn, demonstrated that they would have taken the same action regardless of any alleged retaliatory animus. The undisputed facts

show that Defendants were at Plaintiff's cell at least in part because he was unauthorized to be outside the cell. The undisputed facts also show that Defendants Thrift, Fairchild, and Walker discovered contraband in the cell and then gave any legal documents to a corrections officer. On this record, Defendants have shown that they would have taken the same action in the absence of the protected speech. See Smith, 523 F.3d at 1278 (citing Mt. Healthy, 429 U.S. at 274). Therefore, Defendants Thrift, Fairchild, and Toole are entitled to summary judgment on Plaintiff's retaliation claims arising out of the April 25, 2022 incident.

*(c)    The May 24, 2022 incident.*

Plaintiff next alleges that, on May 24, 2022, Defendants Hammock, Szabo, and Jones approached his cell. Doc. 1 at 12. Defendant Szabo pepper sprayed inside the cell. All three defendants removed him from the cell, then restrained him and left him back in the cell for nearly 12 hours. Id.

The undisputed material facts demonstrate that Defendants Szabo, Hammock, and Jones were present at Plaintiff's cell because either he or his bunkmate was "bucking the flap." Doc. 99-3 at 101. Only then did Defendant Szabo deploy pepper spray. Id. After that, someone (the facts are disputed as to whether it was Plaintiff or his bunkmate) threw a liquid through the tray flap.

Plaintiff has not pointed to any evidence suggesting that Defendants acted with retaliatory intent on May 24, 2022. Plaintiff makes no attempt to link this incident to his broader claims of retaliation, aside from including the incident under the same heading as his other retaliation claims. In addition, the undisputed facts show that Defendants Szabo, Hammock, and Jones were present at Plaintiff's cell because someone (either Plaintiff or his cellmate) was "bucking the tray flap." Doc. 99-3 at 102. It is also undisputed that either Plaintiff or his cellmate threw a

fluid that Plaintiff identified as sour milk through the tray flap at Defendants Szabo, Hammock, and Jones.  Id. at 103.  After Plaintiff was secured in handcuffs, it is undisputed that Defendants advised the duty officer that both Plaintiff and his cellmate remained restrained.

Plaintiff's allegations of causation are conclusory.  At no point does Plaintiff attempt to provide facts demonstrating a retaliatory animus on the part of Defendants Hammock, Szabo, or Jones.  See Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (affirming summary judgement for defendant on a retaliation claim because the plaintiff "produced nothing beyond his own conclusory allegations" to demonstrate retaliatory animus).  In addition, Defendants Hammock, Szabo, and Jones had a legitimate reason to discipline Plaintiff entirely independent of any purported retaliatory motive.  Plaintiff has failed to demonstrate a causal connection for his retaliation claims against Defendants Hammock, Szabo and Jones arising from the May 24, 2022 incident.  Therefore, Defendants Hammock, Szabo and Jones are entitled to summary judgment for these claims.

### C.    Qualified Immunity

Defendants argue they are entitled to qualified immunity on Plaintiff's retaliation claims. Doc. 99-2 at 26.  I have already determined that Defendants are entitled to summary judgment regarding claims from April 25 and May 24, 2022.  Thus, the Court need only address whether Defendant Hammock is entitled to qualified immunity for the claims against her arising from the March 15, 2022 incident, where she threatened that she would "make [Plaintiff's] life hell" if he did not withdraw the grievance.

It is undisputed that Defendant Hammock was acting within her discretionary authority when the incident in question occurred.  Therefore, to prevail, Plaintiff must demonstrate that a violation of a constitutional right occurred and that the right was clearly established at the time

the incident occurred.  However, Defendant Hammock's alleged conduct did not violate any clearly established right.  As with his other claims, Plaintiff has not argued this issue and, therefore, has not met his burden.  Even if he had, I would conclude Defendant Hammock is entitled to qualified immunity.

First, there appears to be no published binding caselaw that is materially analogous to the facts presented here.  And the unpublished cases that address threats as retaliation are not uniform about whether generalized and unfulfilled threats—like the ones at issue here—are sufficient to support a claim of retaliation.  Compare Pittman, 213 F. App'x at 870–71 (concluding that a threat to do "something drastic" may constitute impermissible retaliation) with Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (finding that the defendant's "allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim"); Jordan v. Cheney, No. CV 325-044, 2025 WL 1866093, at *4 (S.D. Ga. July 7, 2025) (concluding the plaintiff failed to state a claim for relief based on threats of physical harm without more); Holliman v. Oliver, No. 4:24-CV-0090, 2024 WL 5701446, at *2 (N.D. Ga. June 26, 2024) (dismissing claims based on unfulfilled threats).

As to broad principles, prison officials who retaliate against inmates for exercising protected speech violate the Constitution.  See Farrow v. West, 320 F.3d 1235, 1249 (11th Cir. 2003) (finding that, when a prison official retaliates against an inmate for filing grievances, the official violates the First Amendment).  But there is no established principle that an officer who makes vague threats subjects herself to constitutional liability.

Lastly, given the vague nature of the alleged threat, and that there is no evidence Hammock carried out the threat, it is plain that Defendant Hammock's alleged conduct does not

lie so obviously at the core of what the First Amendment prohibits that the unlawfulness of the conduct was readily apparent to her.

Plaintiff has not demonstrated that conduct like that alleged here violates clearly established law.  Qualified immunity is appropriate regarding Plaintiff's claims regarding the March 15, 2022 incident involving Defendant Hammock.

In sum, I **RECOMMEND** the Court **GRANT** summary judgment to Defendants Hammock, Thrift, Toole, Fairchild, Szabo, and Jones regarding Plaintiff's retaliation claims.

I note that Plaintiff's claims throughout the Complaint present some close issues of fact that should ordinarily be resolved by a jury.  Qualified immunity, however, exists to allow officials "to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." Crenshaw v. Lister, 556 F.3d 1283, 1289 (11th Cir. 2009) (quoting Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002)).  While Plaintiff's factual assertions could, potentially, support constitutional violations, Plaintiff has not shown that any of Defendants' conduct violated clearly established law.  As a result, Defendants are entitled to qualified immunity.

## V.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address this issue now.  See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691

(M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's claims, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions

on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED AND RECOMMENDED**, this 11th day of September, 2025.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA